IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DENIS DUANE OVERLANDMILLER**,

    Plaintiff,

  v.

**CAROLYN W. COLVIN**,
Commissioner of Social Security,

    Defendant.

Case No. 6:13-cv-01663-SI

**OPINION AND ORDER**

Kathryn Tassinari and Mark A. Manning, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201; Kathy Reif, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Denis Duane Overlandmiller seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. For the reasons discussed below, the Commissioner's decision is affirmed.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

Mr. Overlandmiller was born on October 6, 1951. He served in the Navy during the Vietnam War, from June 15, 1970, to June 14, 1974. He worked for two decades as a photographer, both at a studio and self-employed, and in customer service at a grocery store from July 2009 to July 2010. On October 29, 2012, the Veterans Administration ("VA") determined that Mr. Overlandmiller was 50 percent disabled. His social security insurance coverage runs until December 31, 2015.

Mr. Overlandmiller protectively filed for social security disability benefits on January 3, 2011, alleging that his disability began on July 10, 2009. He claimed that his disability was caused by, among other things, interstitial cystitis, post-traumatic stress disorder ("PTSD"), major depression, thoracolumbar strain, and an inguinal hernia. Mr. Overlandmiller's claim was initially denied on April 28, 2011, and again upon reconsideration on June 23, 2011.

Mr. Overlandmiller then requested an administrative hearing before an ALJ, which took place on November 1, 2012. In support of his claim, Mr. Overlandmiller submitted medical evidence from several treating and examining sources, including Dr. Paula Belcher, an examining psychologist; Dr. Peter Schur, an examining psychologist; Dr. David Clinger, an examining physician with the VA; Dr. Jill Chaplin, an examining physician; Dr. William Mitchell, an examining physician with the VA; and Dr. John Gardin, an examining psychologist with the VA. Mr. Overlandmiller's wife, Cynthia Overlandmiller, also submitted testimony. The ALJ evaluated Mr. Overlandmiller's claim using the five-step analysis established by social security regulations.

A claimant is disabled within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

PAGE 2 – OPINION AND ORDER

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether an individual meets this standard, social security regulations ask five sequential questions, each of which is potentially dispositive. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).

First, has the claimant performed "substantial gainful activity" since his disability onset date? 20 C.F.R. § 404.1520(a)(4)(i). The ALJ determined that although Mr. Overlandmiller worked at a grocery store after his alleged disability onset date, that activity was properly classified as an unsuccessful work attempt, and that Mr. Overlandmiller had not otherwise been gainfully employed during the relevant time period.

Second, is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). At this step, the ALJ determined that Mr. Overlandmiller's interstitial cystitis, back pain, and right inguinal hernia were severe.

Third, do the claimant's severe impairments "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")? 20 C.F.R. § 404.1520(a)(4)(iii). Here, the ALJ determined that none of Mr. Overlandmiller's severe and non-severe impairments were equivalent in severity to those in the Listings.

Fourth, what is the claimant's "residual functional capacity" ("RFC")? Is it sufficient to allow the claimant to perform his or her "past relevant work?" 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ determined that Mr. Overlandmiller retained the capacity to do light work with some limitations—most notably, that he would need to take a bathroom break three times every hour. The ALJ also determined that, with that RFC, Mr. Overlandmiller could perform his previous

work as a photographer, because that occupation (at least as Mr. Overlandmiller had previously performed it) afforded him control over the timing of his bathroom breaks.

Because the ALJ found that Mr. Overlandmiller could perform his past relevant work, she did not proceed to the fifth step of the inquiry—whether, taking into consideration his RFC, age, education, and work experience, other work exists in the national economy in significant numbers that Mr. Overlandmiller could perform. 20 C.F.R. § 404.1520(a)(4)(v). Instead, in accordance with 20 C.F.R. § 404.1520(f), the ALJ found that Mr. Overlandmiller was not disabled within the meaning of the Social Security Act through January 16, 2013, the date of the decision. The Appeals Council denied review, making the ALJ's decision final and entitling Mr. Overlandmiller to review in this Court. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is free of legal error and its findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In reviewing the Commissioner's decision, the Court "must consider the entire record as a whole." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted). The Court may not affirm the Commissioner "simply by isolating a specific quantum of supporting evidence"; nor may the Court affirm the Commissioner on a ground upon which the

PAGE 4 – OPINION AND ORDER

Commissioner did not rely. *Id.* (quotation marks omitted); *see also Bray*, 554 F.3d at 1226. But as long as "the agency's path may reasonably be discerned," the Court must affirm the agency's decision, even though the agency may have explained it with "less than ideal clarity." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

## DISCUSSION

Mr. Overlandmiller argues that the ALJ erred in four distinct ways. He argues that the ALJ improperly rejected certain medical evidence; that the ALJ improperly discounted the VA determination of disability; that the ALJ improperly discredited the lay testimony; and that the ALJ improperly discredited Mr. Overlandmiller's own testimony. Each contention is addressed in turn.

### A. The Medical Evidence

#### 1. Dr. Mitchell

Dr. Mitchell, an examining physician with the VA, opined that Mr. Overlandmiller's interstitial cystitis would "prevent [Mr. Overlandmiller] from securing or following a substantially gainful occupation" and was "likely to be permanently disabling." TR 373. Although the ALJ found that Mr. Overlandmiller's interstitial cystitis was a severe impairment and incorporated it into his assessment of Mr. Overlandmiller's RFC, Mr. Overlandmiller argues that the ALJ erred by failing to address Dr. Mitchell's opinion on the ultimate issue of disability.

When a treating physician's opinion is uncontroverted, an ALJ must provide "clear and convincing reasons supported by substantial evidence in the record" to reject it; but if it is contradicted by other medical evidence, the ALJ need only provide "specific and legitimate reasons." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quotation marks omitted). On the one hand, this standard applies even on the ultimate issue of disability. *Id.* On the other hand, the Ninth Circuit has also aptly observed that

PAGE 5 – OPINION AND ORDER

> a treating physician ordinarily does not consult a vocational expert
> or have the expertise of one. An impairment is a purely medical
> condition. A disability is an administrative determination of how
> an impairment, in relation to education, age, technological,
> economic, and social factors, affects ability to engage in gainful
> activity. . . . The law reserves the disability determination to the
> Commissioner.

*McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(1)).

Here, the ALJ acknowledged the impairment, as well as Dr. Mitchell's assessment of its impact on Mr. Overlandmiller's ability to work.[1] TR. 19. Indeed, the ALJ incorporated the worst-case effect of Mr. Overlandmiller's interstitial cystitis—needing to use the bathroom three times per hour—into his RFC assessment. The ALJ went on to note, however, that on the same day as Dr. Mitchell's assessment, another doctor observed that Mr. Overlandmiller's condition was well-controlled with medication. *Id.* The VE testified that even including the limitation that he be permitted to use the restroom three times an hour, Mr. Overlandmiller could perform his previous work as a self-employed photographer. On the ultimate issue of disability, therefore, Dr. Mitchell's opinion was controverted—both by other medical evidence and by the VE. And the VE's testimony, in light of her expertise, was a specific and legitimate reason to reject Dr. Mitchell's opinion on whether Mr. Overlandmiller was capable of performing his previous work. The ALJ did not err in this regard.

### 2. Dr. Gardin

In March 2012, Dr. Gardin, an examining psychologist with the VA, diagnosed Mr. Overlandmiller with major depressive disorder and PTSD. TR 353. The ALJ assigned this diagnosis low weight. Accordingly, she found Mr. Overlandmiller's mental impairments

---

[1] Mr. Overlandmiller argues that the ALJ "did not mention or discuss" Dr. Mitchell's opinion, but this is incorrect: At TR 19, the ALJ specifically cited to Exhibit 7F/46-49 (TR 375-78), another opinion by Dr. Mitchell in which he makes substantially the same assessment as at TR 373.

nonsevere at step two and did not factor them into his RFC at step four. Mr. Overlandmiller argues that this was error. For at least two reasons, the ALJ's determination is supported by substantial evidence in the record.

First, Mr. Overlandmiller had complained of PTSD and depressive symptoms to only one other provider—Dr. Chaplin, whom he saw a month before Dr. Gardin—and had at that time downplayed their severity, saying that his main difficulty was his joblessness and that he did not need medication. TR 422-23. Indeed, a year earlier, he had specifically asserted to Dr. Schur that his depression was situational and not chemically based. TR 311. Unlike his visits to those providers, Mr. Overlandmiller's visit to Dr. Gardin was "for disability evaluation, not for treatment purposes." TR 342. Accordingly, the ALJ reasoned that he had "every incentive to present himself [to Dr. Gardin] in the worst light possible." TR 15. That Mr. Overlandmiller failed to seek treatment for his mental impairments from his other providers was substantial evidence for the ALJ's determination that his mental impairments were not severe.

Second, in March 2011, Dr. Belcher opined that Mr. Overlandmiller's "symptoms do not meet the criteria for major depression or dysthymic disorder but appear to be reactive to his circumstances." TR 295. Mr. Overlandmiller himself reported that he was depressed fewer days than not to Dr. Belcher and that his depression was merely situational to Dr. Chaplin and Dr. Schur. TR 422-23, 311. Thus, Dr. Gardin's opinion was controverted by other medical evidence and by Mr. Overlandmiller himself, providing the ALJ with specific and legitimate reasons to discount Dr. Gardin's opinion. Mr. Overlandmiller seeks to rebut the ALJ's determination by noting that his medical history consistently reflects a "flat" or "blunted" affect and "depressed mood." *See, e.g.*, TR 287, 292, 314, 427. But an observation of depressed mood is not the same as a clinical diagnosis of major depressive disorder, and neither depressed mood nor flat affect

are, without more, severe impairments. The ALJ's determination was supported by substantial evidence on the record.

### 3. Dr. Clinger

In March 2012, VA physician Dr. Clinger examined Mr. Overlandmiller for back impairments. He observed that x-rays showed "severe disc space narrowing with vacuum disc phenomenon at L5-S1" and diagnosed a low back strain. TR 410-11. He opined that this condition "does not limit [Mr. Overlandmiller] from sedentary occupations." *Id.* Mr. Overlandmiller argues that this was equivalent to a finding that he was *limited* to sedentary work. That is not so. The ALJ incorporated Dr. Clinger's diagnosis of low back strain into Mr. Overlandmiller's RFC at step four by limiting him to light work, and Dr. Clinger offered no opinion on Mr. Overlandmiller's ability to work at that level of exertion. Therefore, rather than reject Dr. Clinger's opinion, the ALJ's determination was consistent with it.

## B. The VA Disability Rating

On October 29, 2012, the VA rated Mr. Overlandmiller 50 percent disabled. This determination was based entirely on Mr. Overlandmiller's alleged PTSD and depression; consideration of his other impairments was deferred. TR 154-57. The ALJ considered the VA's determination unpersuasive because "the factors that provide the basis for the award are not well documented in the medical records." TR 16. Mr. Overlandmiller contends that this was error.

While a VA determination of disability does not compel an identical result from the Social Security Administration, 20 C.F.R. § 404.1504, it does merit "great weight." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). But if the ALJ provides "persuasive, specific, valid reasons . . . supported by the record," she is permitted to assign the VA determination less weight. *Id.* The ALJ may, for example, interpret the medical records differently and therefore disagree with the VA about the disabling effects of particular impairments. *Berry v. Astrue*, 622

PAGE 8 – OPINION AND ORDER

F.3d 1228, 1236 (9th Cir. 2010). The ALJ may also have available evidence that was not available to the VA. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009). Both of these meet the *McCartey* standard for discounting the VA's determination.

Here, the VA's determination was based entirely on the examination of Mr. Overlandmiller by the VA psychologist, Dr. Gardin. The ALJ rejected Dr. Gardin's opinion on Mr. Overlandmiller's PTSD based on other medical evidence—evidence that either was not available to or was not considered by the VA. *See* TR 154-55. Accordingly, the ALJ interpreted the medical evidence differently than did the VA and did not find that Mr. Overlandmiller had disabling PTSD. The ALJ also considered the VA determination in light of Mr. Overlandmiller's testimony at the hearing that he was "not only emotionally and intellectually willing and able to perform such work, but would prefer to do so," and was limited more by his "interstitial cystitis and need to go to the bathroom rather than by any mental health restrictions." TR 16. Both the medical evidence and Mr. Overlandmiller's testimony were "persuasive, specific, valid reasons . . . supported by the record" for the ALJ to reach a different conclusion than did the VA. *Cf. McCartey*, 298 F.3d at 1076.

**C.   The Lay Testimony**

Mr. Overlandmiller's wife, Cynthia Overlandmiller, completed a third-party function report. TR 183-90. In it, she described her husband as forgetful, "slowed down," frustrated, angry, and less outgoing. The ALJ may discount the testimony of a lay witness by giving reasons that are germane to that witness. *Valentine*, 574 F.3d at 694. The ALJ accepted that Ms. Overlandmiller's perceptions of Mr. Overlandmiller's behavior might be accurate, but found that the observed behavior was inconsistent with the medical evidence. Alternately, the ALJ determined, Ms. Overlandmiller's report could be read in accord with the medical evidence to

PAGE 9 – OPINION AND ORDER

represent volitional rather than medically dictated behavior. TR 19. Both reasons are germane to Ms. Overlandmiller's testimony and are therefore sufficient to discount it.

### D. The Plaintiff's Testimony

Mr. Overlandmiller testified about his symptoms both at the hearing and in a written function, pain, and fatigue report. TR 199-207 (containing Mr. Overlandmiller's written report). The ALJ acknowledged that Mr. Overlandmiller's medically determinable impairments could be expected to produce some of the symptoms that he alleged, but that his testimony "concerning the intensity, persistence, and limiting effects" of his symptoms was "not entirely credible." TR 19. The Ninth Circuit has established a two-part test to evaluate a claimant's testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives specific, clear and convincing reasons for the rejection.

*Chaudhry v. Astrue*, 688 F.3d 661, 670–71 (9th Cir. 2012) (quotation marks, citations, and alterations omitted).

Here, the ALJ made several observations that meet the clear-and-convincing standard. First, in his function report, Mr. Overlandmiller alleged that he had "lost <u>every</u> job since the early 90s because of [interstitial cystitis]." TR 206. Elsewhere, however, he claimed that he had to shut down his wedding-photography business when he lost clients to the iPhone and the digital age, TR 264; that he lost his livelihood because of the economic depression, TR 313; and that he quit his grocery-stocking job because the work was too strenuous, not because of interstitial cystitis, TR 255. That Mr. Overlandmiller ceased working for reasons other than his disability weighs against his credibility, *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); that his statements were inconsistent with each other weighs even further, *see Burch*, 400 F.3d at 680.

PAGE 10 – OPINION AND ORDER

Second, earlier in her opinion, the ALJ noted that Mr. Overlandmiller's report to Dr. Gardin was significantly different than his report to other examiners, such as Dr. Belcher. Before Dr. Belcher, for example, Mr. Overlandmiller denied excessive worries, fears, nightmares, and intrusive thoughts, TR 294, whereas to Dr. Gardin he reported flashbacks and nightmares, TR 344. This type of discrepancy is highly relevant to "ordinary techniques of credibility evaluation," *Burch*, 400 F.3d at 680, and is a clear and convincing reason to discredit Mr. Overlandmiller's testimony.

## CONCLUSION

Because the ALJ did not err her evaluation of the medical evidence, the VA disability rating, the lay evidence, or Mr. Overlandmiller's testimony, she did not err in finding that Mr. Overlandmiller retains the ability to perform his past relevant work as a photographer. The Commissioner's decision is therefore AFFIRMED.

**IT IS SO ORDERED**.

DATED this 26th day of January, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge